IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| NEW MILLENIUM MANAGEMENT, LLC, | ) ) | CASE NO. 13-35719-H3-11 |
| Debtor, | ) ) ) | |

MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Motion of Creditor TexHou Investment Group, Ltd., to (1) Convert Case to One under Chapter 7, or (2) Appoint a Trustee" (Docket No. 42) and the "Debtor's Emergency Motion to Extend Time to File Chapter 11 Plan and Disclosure Statement" (Docket No. 75).  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered directing the appointment of a Chapter 11 Trustee, and denying the extension of exclusivity requested by Debtor.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

New Millennium Management, L.L.C. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 13, 2013.

Debtor's primary business is the operation of a commercial building located at 810 Waugh, Houston, Texas. Debtor's sole member, David Sheller, testified that the building has 8,700 square feet of net rentable space.

Sheller testified that he individually purchased the land during 1999. He testified that Debtor completed construction of the building in December, 2005.

Sheller testified that, prior to the petition date, a portion of the building consisting of 2,200 square feet on the first floor was occupied by a champagne bar. He testified that, prior to September 1, 2013, twelve days before the petition in the instant case was filed, the bar was operated by LeighAsta, Inc., ("LeighAsta") an entity owned by Sheller.

On September 1, 2013, Debtor, as Landlord, and "D4 LLC, and Kevin McElroy Individually, Declan Plunkett his guarantor, and or his assigns which must be approved by Landlord," as Tenant, entered into a lease of the bar premises in Suite 100. The initial term of the lease was five years. The initial rent was $5,000, plus triple net expenses. The lease also provided in pertinent part:

> A portion of the Premises is currently occupied by Landlord for his restaurant business adjacent to the Premises in Ste. 100. Such portion shall be vacated and delivered to Tenant by September 7, 2013. Tenant shall pay Landlord $90,000 for the stock of LeighAsta, Inc. Landlord shall pay and satisfy all existing obligations and or debts of LeighAsta, Inc. out of said proceeds.

(Movant's Exhibit 13).

On September 3, 2013, ten days before the date of filing of the petition in the instant case, D4 Pub, LLC[1] and Debtor entered into a lease addendum. The addendum recites:

> David Sheller acknowledges the receipt and payment of $5000 from Kevin McElroy for the purchase of LeighAsta, Inc. on September 3, 2013. The terms of the sale shall be changed at the request of the buyer and $60,000 shall be due and payable on December 1, 2013. All other terms and conditions of the lease executed on September 1, 2013 shall remain the same and may not be changed without the express written agreement of both parties. The guaranty agreement shall remain in full force and effect.

(Debtor's Exhibit 7).

On January 3, 2014, 112 days after the date of filing of the petition in the instant case, and 21 days after the date of filing of the instant motion to convert, D4 Pub, LLC, Sheller, individually, and Debtor entered into a second addendum. The second addendum recites in pertinent part:

> David Sheller acknowledges the receipt and payment of $5000 from Kevin McElroy for the purchase of LeighAsta, Inc. on September 3, 2013. The terms of the sale shall be change. [sic] Kevin McElroy has paid a total of $40,000 to David Sheller to date. The other $$47,550 [sic] shall be due and payable on February 28, 2013 [sic] instead of December 2013. As additional consideration for David Sheller individually waiting to be paid; the percentage rent paid to New Millennium Management LLC shall be changed as follows:  1 percent of the monthly gross sales at $75,000 per month and above shall be due and payable to New Millennium

---

[1]The court notes that the original lease agreement identifies the corporate tenant as D4 LLC, and the addendum identifies the corporate tenant as D4 Pub, LLC.

> Management LLC to $125,000 per month on or before the 5th day of the next month.  Monthly Sales of $125,000 per month require a payment to New Millennium Management LLC of 3 percent of the total gross sales for that month which shall be due and payable on the 5th day of the next month as part of the rent...All other terms and conditions of the lease executed on September 1, 2013 shall remain the same and may not be changed without the express written agreement of both parties.  The guaranty agreement shall remain in full force and effect.

(Debtor's Exhibit 8).

Sheller testified that, despite the language in the initial lease naming Debtor as the landlord, and directing that the new tenant make payment to Debtor, the new tenant was always intended to pay Sheller individually for the ownership of LeighAsta.

Sheller admits that Debtor did not seek court approval of the second addendum to the lease.

Sheller testified that, prior to the petition date, LeighAsta (an entity then owned by Sheller) did not pay rent in cash to Debtor.  He testified that LeighAsta paid rent in kind.  He testified that LeighAsta paid rent by paying bills for water, garbage disposal, lawn maintenance, and a lease of parking spaces, and also cleaned the parking lot and watered the plants.  He testified that LeighAsta also paid rent by building out the space.  He testified that he personally provided most of the funds for building out of the bar space.

Sheller testified that a portion of the building is

4

occupied by his own law firm, the Sheller Law Firm PLLC ("SLF"). David Littwitz, a commercial real estate broker who sought to sell the building on Debtor's behalf prepetition, testified that SLF occupies 800 to 1,000 square feet. Sheller testified that SLF occupies approximately 400 square feet, a portion of which is taken up by Debtor's files. The court finds Littwitz' testimony more credible than that of Sheller on this issue.

Sheller testified that, prior to the petition date, SLF (an entity owned by Sheller) did not pay rent in cash to Debtor. Sheller testified that SLF paid rent in kind to Debtor by performing legal services for Debtor. Sheller estimates the value of his services at $195,000. He testified that the services he performed included over 100 hours negotiating on a lease that was never executed, litigation against the general contractor who built the building, negotiation of other leases, and extensive litigation with a tenant regarding an amount in controversy of $150 per month. Sheller testified that he was individually a defendant in the litigation with Debtor's tenant.

Sheller testified that postpetition, SLF is paying rent in cash to Debtor. He testified that the rent was initially set at $1,250 per month, but that he changed it and began paying $1,850 per month in rent, plus triple net expenses. He testified that his total rent payment is now $2,690.40.

Sheller testified that Debtor's largest creditors are

Sheller himself, and Sheller's mother. He testified that Debtor's only other undisputed debt is an unsecured claim based on Debtor's lease of a parking lot.[2] He testified that the remainder of the claims (a total of three claims) are disputed.

Sheller testified that Debtor has negotiated a lease with Brit Beauty, LLC for lease of approximately 2,000 square feet. He testified that the rental rate is $5,000 per month, plus triple net expenses. He testified that he negotiated to give the new tenant six months' free rent, as an incentive to sign the lease. He justified this decision based on the facts that the lease is scheduled to begin on the day after another tenant's lease of the space ends, that there would be no broker representing the tenant, and that the tenant did not require Debtor to build out the space. The lease, signed on January 14, 2014, is in evidence. (Debtor's Exhibit 10).

Sheller testified that the lease with Brit Beauty, LLC was negotiated prior to the petition date. He testified that Debtor agreed to pay a commission of one half of one percent to Littwitz. Debtor has not sought authority from this court to execute the lease or to employ and pay a commission to Littwitz. He testified that he believed the transaction was in the ordinary course of Debtor's business.

---

[2]This appears to be the same parking lot lease paid by LeighAsta prior to the sale of LeighAsta twelve days prepetition.

Sheller testified that he prepared Debtor's monthly operating reports. He testified that he prepared the report filed on November 20, 2013, and signed it under penalty of perjury. The report indicates, <u>inter</u> <u>alia</u>, that Debtor had gross revenue in October, 2013, of $13,750. (Movant's Exhibit 7).

Sheller testified that, during October, 2013, D4 made two rent payments of $6,500 each. He testified that Debtor received $4,500 from Sheller, individually, to pay for Debtor's insurance. The sum of those three payments is $17,500, an amount greater than that shown on Debtor's monthly operating report for gross revenue. Sheller testified that it appears the November 20, 2013 monthly operating report is inaccurate, and needs to be amended.[3]

Sheller testified that Debtor's business plan is to attempt to get the building fully leased, and hire a broker to sell or lease the property. He testified that he believes Debtor can operate profitably, if it can get a new loan to refinance the building at an interest rate of five percent.

Sheller testified that the amortization on a $2.2 million 30-year note at five percent interest would require a monthly payment of $11,800.

Debtor has filed a motion for authority to use cash

---

[3]The court takes judicial notice that Debtor has not amended the monthly operating report filed on November 20, 2013.

collateral.  Attached to that motion, Debtor has presented budget projections.  For January, 2014, Debtor projects cash revenue of $15,798 and cash expenses of $10,885, for a net gain of $4,913.  For February, 2014, Debtor projects cash revenue of $15,798 and cash expenses of $7,516, for a net gain of $8,282.  For March, 2014, Debtor projects cash revenue of $15,798 and cash expenses of $9,016, for a net gain of $6,782.  For April, 2014, Debtor projects cash revenue of $12,882 and cash expenses of $13,999, for a net loss of $1,117.  For May, 2014, Debtor projects cash revenue of $9,965 and cash expenses of $7,916, for a net gain of $2,049.  For June, 2014, Debtor projects cash revenue of $9,965 and cash expenses of $7,516, for a net gain of $2,449.  (Docket No. 97).  No month in Debtor's projection is projected to produce sufficient income to fund a payment of $11,780 to amortize a new loan.  (Docket No. 97-2).

        The instant case was filed on September 13, 2013.  The hearing on the instant motions was commenced on January 22, 2014, and concluded on January 30, 2014, 139 days after the date of filing of the petition in the instant case.  Debtor has not filed a plan of reorganization or a disclosure statement.  Sheller testified that he does not know what a disclosure statement is.

        In the instant motions, TexHou Investment Group, Ltd. seeks conversion to Chapter 7, or appointment of a Chapter 11 trustee, based on Sheller's allowing tenants to occupy Debtor's

building at below-market rents, inadequate insurance, and inaccurate schedules. Debtor seeks an extension of its exclusive period to propose a plan and disclosure statement, on grounds Debtor's counsel (who was new to the case when the motion was filed) had not had an opportunity to retrieve Debtor's file from previous counsel and prepare a plan and disclosure statement.

## Conclusions of Law

Section 1112(b)(1) of the Bankruptcy Code provides for dismissal or conversion of the case, if the movant establishes cause, "unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

Section 1112(b)(2) of the Bankruptcy Code provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
> > (i) for which there exists a reasonable justification for the act or omission; and

>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

> Section 1112(b)(4) of the Bankruptcy Code provides:
>
> For purposes of this subsection, the term 'cause' includes--
>
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
> (L) revocation of an order of confirmation under section 1144;
> (M) inability to effectuate substantial consummation of a confirmed plan;
> (N) material default by the debtor with respect to a confirmed plan;
> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b).

The Section 1112(b)(4) list of items identified as constituting cause for conversion or dismissal is non-exclusive. See In re Global Ship Systems, LLC, 391 B.R. 193 (Bankr. S.D. Ga. 2007); In re The 1031 Tax Group, LLC, 374 B.R 78 (Bankr. S.D.N.Y. 2007).

Courts consider the totality of the circumstances in determining whether there is cause for dismissal or conversion under Section 1112(b).  See Matter of Atlas Supply Corp., 857 F.2d 1061 (5th Cir. 1988).

Section 1104(a) of the Bankruptcy Code provides:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

The party moving for appointment of a trustee must prove the need for a trustee by clear and convincing evidence.

See In re G-I Holdings, Inc., 385 F.3d. 313 (3d Cir. 2004). See also Matter of Cajun Elec. Power Co-Op, Inc., 69 F.3d 746 (5th Cir. 1995)(opinion withdrawn). The court considers the totality of the circumstances in determining whether to appoint a trustee. See In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir. 1989).

In the instant case, Sheller has made agreements on Debtor's behalf, both prepetition and postpetition, regarding the space occupied by LeighAsta, an entity he controlled two weeks before the petition date, and by SLF, his own law firm. Sheller drafted documents identifying property interests of the Debtor, a corporate entity, with the pronoun "his," indicating that he did not adequately differentiate between his own interests and those of the corporate Debtor. The prepetition agreement regarding SLF involves Sheller determining that SLF would not pay rent in cash to Debtor, based on his own self-interested assessment of the value of his own legal work on Debtor's behalf, including in a case in which he was individually a defendant. There has been no opportunity for creditors or the court to review the agreement or to assess the value of the services rendered. The postpetition agreement has seen Sheller unilaterally change the amount of SLF's rent. Sheller failed to disclose these arrangements and seek court approval. His claim that he believes this was in the ordinary course of Debtor's business is not sufficient to excuse this. It is self-dealing, and has the effect of concealing his

activities from the court and creditors.  Standing alone, it constitutes cause for conversion or appointment of a trustee.

Additionally, Sheller has signed under penalty of perjury, and filed on Debtor's behalf, monthly operating reports which are materially inaccurate.  Debtor has not filed a plan of reorganization, more than 140 days into the case.  The court infers from Sheller's testimony that he does not know what a Chapter 11 disclosure statement is, that he has not made significant progress toward the preparation of a plan or disclosure statement in the instant case.  The court concludes that there is cause for conversion or for appointment of a Chapter 11 trustee.

In deciding between appointing a trustee under Chapter 11 or conversion of the case to Chapter 7, the court takes into consideration the fact that Debtor has an operating business.  Although liquidation may ultimately turn out to be the option in the best interests of creditors and the estate, a trustee should have an opportunity to evaluate the financial affairs of the Debtor, and to proceed toward either reorganization or liquidation.  The court concludes that a Chapter 11 trustee should be appointed.

With respect to the question of extension of exclusivity, Section 1121 of the Bankruptcy Code provides in pertinent part:

> (b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.
>
> (c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if -
>
>> (1) a trustee has been appointed under this chapter;
>>
>> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
>> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.
>
> (d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121.

The party seeking an extension of exclusivity bears the burden of demonstrating cause for such an extension. <u>In re Borders Group, Inc.</u>, 460 B.R. 818 (Bankr. S.D.N.Y. 2011).

In determining whether to grant an extension of exclusivity, courts consider (1) the size and complexity of the case; (2) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiations with its creditors; (7) the amount of time which has elapsed in the case; (8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists. In re GMG Capital Partners III, L.P., --- B.R. ----, 2014 WL 260552 (Bankr. S.D.N.Y. 2014).

In the instant case, there is insufficient evidence to support a finding of cause to extend exclusivity. The case is relatively small. Debtor has had sufficient time to negotiate a plan, but has not done so. Debtor has made little progress toward reorganization and has filed inaccurate monthly operating reports. Debtor has not demonstrated reasonable prospects for filing a viable plan. The court concludes that the requested extension of the exclusive period to file a plan should be denied.

Based on the foregoing, a separate Judgment will be entered directing the appointment of a Chapter 11 Trustee, and denying the extension of exclusivity requested by Debtor.

Signed at Houston, Texas on February 25, 2014.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE